UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY ORTIZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. CV 15-02831-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.

## INTRODUCTION

Henry Ortiz ("Plaintiff") challenges the Commissioner's denial of his application for supplemental security income ("SSI") following an administrative law judge's ("ALJ") determination that he is not disabled. Administrative Record ("AR") 555. For the reasons below, the Commissioner's decision is REVERSED and the action is REMANDED for further proceedings consistent with this Order.

///

///

///

///

## II.

## PROCEDURAL BACKGROUND

Plaintiff received SSI benefits as a child. AR 541. As required by law, when Plaintiff turned 18, the Social Security Administration ("SSA") re-determined his eligibility to receive SSI under the rules for determining disability in adults. *Id*. On December 5, 2007, the SSA determined that Plaintiff was no longer disabled. *Id.* at 37-40. On December 16, 2008, the SSA affirmed that determination after Plaintiff requested reconsideration. *Id*. at 41-45. Plaintiff requested a hearing, which was held before an ALJ on June 24, 2009. *See id*. at 494-537. On February 24, 2010, the ALJ concluded that Plaintiff's disability ended on December 1, 2007, and that Plaintiff had not become disabled again since that date. *Id.* at 28-29. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. *Id*. at 6-8.

Plaintiff appealed the Commissioner's decision to this Court and, on June 6, 2013, this Court reversed and remanded the matter to the Commissioner for further proceedings. *Id*. at 599-605. The Appeals Council thus vacated the initial decision and remanded the matter to an ALJ for further proceedings consistent with the order of this Court. *Id*. at 565, 570. On November 17, 2014, an administrative hearing was held. *See id*. at 542, 776-798. Represented by counsel, Plaintiff appeared and testified, as did an impartial vocational expert ("VE"). *Id*. at 542. On February 4, 2015, the ALJ again found that Plaintiff was not disabled and had not been disabled since December 1, 2007. *Id*. at 555. Plaintiff filed the instant action challenging that determination in this Court on April 16, 2015. Dkt. No. 1.

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled. 20 C.F.R. §§ 404.1520, 416.920; *see also Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ noted that Plaintiff had been found no longer disabled—and therefore no longer eligible to receive the SSI benefits that he received as a child—by the SSA as of December 1, 2007. AR 545.

At **step two**, the ALJ found that Plaintiff had two "severe" impairments: psychotic disorder and gunshot wound. *Id.* At **step three**, the ALJ found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* (citations omitted). At **step four**, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work:

> The claimant can lift and carry 50 pounds occasionally and 25 pounds frequently. He can stand, and walk for 6 hours and can sit for 6 hours in an 8-hour workday, with normal breaks. He can perform postural activities (bending, stooping, crouching and crawling) frequently. He can push and pull without significant limitation. He is precluded from performing detailed or complex tasks, but is able to perform simple repetitive tasks. He can have occasional contact with co-workers, supervisors. He is precluded from no more than minimal contact with general public. He has no other limitation.

*Id.* at 550-51. Plaintiff has no past relevant work, but at **step five**, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform. *Id.* at 554. Accordingly, the ALJ found that Plaintiff is not disabled "and has not been under a disability since December 1, 2007." *Id.*

## III.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc.*

*Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989)).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotations omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins,* 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

## IV.
## DISCUSSION

Plaintiff contends that the ALJ erred in assessing his mental impairments and the evidence regarding the nature and severity of those impairments. *See* Plaintiff's Brief in Support of Complaint ("Pl. Brief") at 4, Dkt. No. 18. Specifically, Plaintiff argues that the ALJ erred by not incorporating into his final RFC assessment certain opinions of consultative examining psychiatrist Stephen Erhart, M.D. and treating psychiatrist Theodore Pearlman, M.D.—or properly explaining in his decision why those opinions were not incorporated. *See id.* at 9-12. The Commissioner, in turn, argues that "[s]ubstantial evidence supported the ALJ's evaluation of the medical

evidence, including the findings of" Dr. Erhart and Dr. Pearlman. *See* Defendant's Brief in Support of Defendant's Answer ("Def. Brief") at 2-11, Dkt. No. 19.

## A. <u>Applicable Law</u>

This Court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision. *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005).[1] The ALJ must consider *all* medical evidence in the record, *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), and unless "a treating source's opinion is given controlling weight," must explain the weight accorded to treating source, non-treating source, and other non-examining source opinions. 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii); When an RFC assessment conflicts with an opinion from a medical source, the ALJ "must explain why the opinion was not adopted." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996);[2] *see also Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJs need not discuss all evidence presented, but must explain the rejection of uncontroverted medical evidence and significant probative evidence). "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citation omitted).

## B. <u>ALJ's Decision</u>

In his decision, the ALJ discussed and summarized the findings of Dr. Erhart and Dr. Pearlman. Regarding Dr. Erhart's findings, the ALJ stated as follows:

> [T]he claimant underwent a second consultative psychiatric evaluation on November 21, 2013, with Stephen Erhart, M.D., who notes claimant's chief psychiatric complaint of anxiety

---

[1] RFC is what a person can do despite exertional and nonexertional limitations. 20 C.F.R. § 404.1545; *Cooper v. Sullivan,* 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2] SSRs do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute" and regulations it administers, and are accorded deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

5

> symptoms. Dr. Erhart obtained history, made observations, and performed mental status examination. He determined that the claimant has anxiety disorder … and assigned an incredible GAF score of 45, denoting serious impairment. Dr. Erhart alluded to the possibility of a schizotypical personality as well. Dr. Erhart opined that the claimant is unimpaired in his ability to perform simple tasks and only mildly impaired in his ability to perform complex tasks. He specifically found claimant has no limitation in daily activities. He found the claimant's ability to maintain focus and concentration moderately impaired. Dr. Erhart also found claimant is severely limited in his ability to interact with others and in his ability to respond to routine work stresses and changes.

AR 549 (citations to the record omitted).

Regarding Dr. Pearlman's August 7, 2013 mental health questionnaire, *id.* at 575-80, the ALJ stated as follows:

> Dr. Pearlman reported that the claimant was first examined on September 7, 2012 and seen approximately monthly through August 2013. He opined that the claimant was markedly limited in dealing with detailed or complex tasks, but had no limitations in handling simple tasks and instructions. He noted that the claimant had not been psychiatrically hospitalized, but received outpatient treatment. He opined that the claimant probably had an IQ of 75. The claimant lacked motivation to perform chores or shopping and relied on his family. He noted that the claimant had some friends. He noted that the claimant focuses on his pain. He diagnosed the claimant with major depression and chronic pain disorder with psychological and physical factors. Dr. Pearlman noted that the claimant is able to independently present to appointments and exhibits a normal gait and posture.

*Id.* at 547 (citations to the record omitted).

The ALJ found Dr. Pearlman's underlying treatment notes to be "vague," and opined that they "essentially regurgitate subjective statements…." *Id.* at 548. The ALJ did note, however, that Dr. Pearlman's indication that Plaintiff "is cognitively

6

impaired is consistent with [an earlier noted] GAF score of 55, denoting moderate symptoms," and found the findings consistent with the determination that Plaintiff "has moderate difficulty in concentration, persistence or pace." *Id*

Regarding the weight accorded to the medical opinions in the record, the ALJ stated only that *significant* weight was accorded to the opinions of the consultative examiners and the State agency psychiatric consultants,[3] and that *reasonable* weight was accorded to the opinion of Dr. Pearlman. *Id*. at 553.

### C. Dr. Erhart's Opinions

Plaintiff contends that the ALJ erred by not fully incorporating into his RFC assessment Dr. Erhart's opinion that Plaintiff's ability to interact with the general public, coworkers, and supervisors was severely impaired. *See* AR 675 (noting that Plaintiff's severe impairment was "evidenced by over-generalized suspiciousness (and resulting bravado), but also by limited ability to read social cues prompting answers and a need to be repeatedly redirected"); *see also* Pl. Brief at 9; AR 550-51 (ALJ's RFC assessment stating that Plaintiff "can have occasional contact with co-workers, supervisors[,]" but "is precluded from no more than minimal contact with general public"). The Commissioner acknowledges this argument, but argues that the "ALJ reasonably gave more weight to the multiple psychiatric opinions of Scott Kopoian, Ph.D., R. Tashjian, M.D., and Frank Williams, M.D., that Plaintiff had at most, moderate limitation in social functioning. Substantial evidence supported the ALJ's finding that Plaintiff was able to have some interaction with the general

---

[3] The ALJ references two consultative psychological examinations in his decision; one by Scott Kopoian, Ph.D., on November 28, 2007, *see* AR 548, and one by Dr. Erhart on November 21, 2013. *See* AR 549. Furthermore, the ALJ references two State agency psychiatric consultations; one by R. Tashjian, M.D., on December 3, 2007, *see id.*, and one by Frank Williams, M.D., on March 8, 2008. *See id.* The ALJ does not identify a specific consultative examiner or State agency psychiatric consultant. *Id*. at 553 ("I give significant weight to the opinions of the consultative examiners and the State agency psychiatric consultants."). Accordingly, the Court assumes that the ALJ meant to give significant weight to each of the four opinions.

public and with potential coworkers and supervisors." Def. Brief at 6 (citation to the record omitted). However, even if the ALJ gave more weight to the opinions of Dr.'s Kopoian, Tashjian, and Williams—and even if that decision was reasonable—the ALJ is not absolved of his duty to explicitly reject Dr. Erhart's opinion, or to set forth specific, legitimate reasons for crediting those of Dr.'s Kopoian, Tashjian, and Williams. *Garrison*, 759 F.3d at 1012. Further, it is not entirely clear whether or to what extent the ALJ actually did credit those opinions.

In his November 2, 2007 psychological evaluation report, Dr. Kopoian noted that Plaintiff's ability to interact with coworkers "is mildly impaired on the basis of his level of anxiety and related distress due to PTSD, which has assumed a chronic course[,]" but found that Plaintiff could "interact with people consistently without exhibiting behavioral extremes in settings with no more than minimal to ordinary levels of stress and tension." AR 296. Both Dr.'s Tashjian and Williams assigned even fewer restrictions, finding that Plaintiff is not significantly limited in *any* area of social interaction, including but not limited to the ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers without exhibiting any behavioral extremes or distracting them. *Id.* at 309, 331. The ALJ's RFC assessment is more restrictive than those rather benign opinions—and is arguably closer to Dr. Erhart's opinion. However, whereas Dr. Erhart opined that Plaintiff is severely impaired in his ability to interact with the public, coworkers, *and* supervisors, *see id.* at 675, the ALJ's RFC assessment treats those groups differently. *See* AR 550-51 (ALJ's RFC assessment, noting that Plaintiff could have *occasional* contact with coworkers and supervisors, but was restricted to *no more than minimal* contact with the public).

Because the ALJ gave "significant weight" to the opinions of the consultative examiners and State agency psychiatric consultants without differentiating between them, his explicit reasoning for this apparent deviation, whether reasonable or not, is unclear. Accordingly, the ALJ's RFC assessment is not supported by substantial

evidence. *See Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJs do not need to discuss all of the evidence presented, but must explain the rejection of uncontroverted medical evidence and significant probative evidence); *see also Morinskey v. Astrue*, 458 F. App'x 640, 641 (9th Cir. 2011) (the ALJ erred by not analyzing or making findings setting forth specific and legitimate reasons for rejecting the opinion of an examining consultant that the claimant was moderately impaired in the ability to maintain regular attendance, sustain ordinary routines, and complete a normal work day or workweek without interruption from his bi-polar disorder); *Padilla v. Colvin*, 2015 WL 3849128, at *5-6 (C.D. Cal. June 22, 2015) (despite the ALJ's claim that he gave an opinion "significant weight," the ALJ did not explain why he apparently rejected moderate limitations in the ability to perform work activities on a consistent basis without special or extra supervision, and to complete a normal workday or work week due to her mental condition).

Furthermore, the ALJ's apparent error was not harmless. *See Tommassetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (for an error to be harmless it must be clear that it "was inconsequential to the ultimate nondisability determination"). At Plaintiff's second hearing, the ALJ asked the VE whether a hypothetical individual that "has the age education, and work background, or lack thereof of" Plaintiff who, *inter alia*, is able to do medium work, is precluded from detailed or complex tasks, can perform simple repetitive tasks, and "can deal with coworkers, supervisors, and the general public occasionally, not frequently[,]" would be able to work. AR 794. The VE said yes, and identified three jobs that such a person could do: dishwasher, laundry worker, and hand packager. *Id*. The ALJ's second hypothetical modified the first, adding that "this person is precluded from more than minimal contact with the general public." *Id*. at 795. According to the VE, such a person could do the same three jobs. *Id*. For his third hypothetical, the ALJ stated as follows:

> Q   Hypothetical person number three has the same limitations I described for hypothetical person number two.

9

> This person would be able to deal with coworkers and supervisors on a very occasional basis, and it would be more than minimal, but less than occasional. Could this person work?
> A    Well, this isn't necessarily addressed in the <u>Dictionary of Occupational Titles</u> --
> Q    Correct.
> A    -- as well as its companion publications, but based on my professional experience in placing disabled workers, it's my opinion that this hypothetical individual would not be able to do medium unskilled work given these parameters.
> Q    So this hypothetical person would not be able to work at all, is that correct?
> A    Correct, yes, sir.

AR at 796.

From the foregoing, it appears that the ALJ's third hypothetical most reflects Dr. Erhart's opinion. The ALJ's RFC assessment, however, most closely resembles the second hypothetical. According to the VE, the third hypothetical individual is disabled and the second is not. Thus, the ALJ's error is not inconsequential to the ALJ's nondisability determination. *Tommassetti*, 533 F.3d at 1038. Accordingly, remand is warranted on this ground. *See, e.g., Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (remanding the action and inviting the ALJ to comment on an opinion not mentioned by the ALJ in the written decision).

### D.    **Dr. Pearlman's Opinions**

Plaintiff also contends that the ALJ failed to provide specific, legitimate reasons for not crediting Dr. Pearlman's opinions. *See* Pl. Brief at 11 (citing *Lester*, 81 F.3d at 830-31). Specifically, Plaintiff contends: (1) that Dr. Pearlman's opinion that the "interference on attention caused by [his] somatic focus on pain would interfere with the ability to engage in unskilled work," *id.* at 11 (citation omitted); *see also* AR 579 (Dr. Pearlman's opinion that, in "an ordinary work-like setting, [Plaintiff]'s focus on chronic pain will exacerbate"); and (2) that Dr. Pearlman's opinion that he has propensity toward engaging in confrontation for trivial reasons

"would interfere with the ability to work with or around other people and to accept instructions and criticism from supervisors[,]" and would "preclude[] the level of social interaction described by the ALJ's [RFC] assessment." *See* Pl. Brief at 11; *see also* AR 578. Plaintiff supports his claims by citing the Social Security Administration's Program Operations Manual System ("POMS"), an internal agency document employees use to process claims, *see* POMS, *available at* https://secure.ssa.gov/apps10 (last visited Nov. 20, 2015), and specifically, POMS DI 25020.010 ¶ B.3, which lists a number of mental abilities that are critical for the performance of unskilled work.

As to his first claim, Plaintiff cites POMS DI 25020.010 ¶ B.3.d, which states that the claimant must be able to "maintain attention for extended periods of 2-hour segments (concentration is not critical)." The Court is not convinced, however, that POMS DI 25020.010 ¶ B.3.d directs the result that Plaintiff desires. While Plaintiff contends that his focus on pain in a work-like setting would cause "interference on attention," and thus interfere with his ability to do unskilled work, Dr. Pearlman's opinion does not explicitly address attention. Rather, Dr. Pearlman states only that Plaintiff's "focus on chronic pain will exacerbate" in an ordinary work-like setting. AR 579. And even if the Court were to infer that Plaintiff's pain focus would have *some* negative impact on his ability to maintain attention, Dr. Pearlman's opinion does not firmly establish that Plaintiff cannot maintain attention for two-hour segments.[4]

As to his second claim, Plaintiff cites POMS DI 25020.010 ¶ B.3.f, k, and m. *See* Pl. Brief at 11. Those sections provide as follows:

> The claimant/beneficiary must show the ability to:
> . . .
>     f. sustain an ordinary routine without special supervision.
> . . .

---

[4] Dr. Pearlman opined that Plaintiff's concentration is poor. AR 579. However, as noted, POMS DI 25020.010 ¶ B.3.d provides that "concentration is not critical[.]"

   k. accept instructions and respond appropriately to criticism from supervisors.

…

   m. respond appropriately to changes in a (routine) work setting.

As an initial matter, the Court notes that Plaintiff's claim that confrontations "with *others* for trivial reasons would interfere with the ability to work with or around other people and to accept instructions and criticism from supervisors," Pl. Brief at 11 (emphasis added), is somewhat misleading. Dr. Pearlman actually said that Plaintiff "*at times* gets into confrontations with *his siblings* for trivial reasons." AR 578 (emphasis added). It may be reasonable to infer that Plaintiff's apparently occasional propensity toward confrontation with family would transfer into a work environment, but Dr. Pearlman did not explicitly state as such. Furthermore, even if the Court were to make such an inference, it appears that only ¶ B.3.k could be directly affected by Plaintiff's propensity toward confrontation.

Moreover, "POMS constitutes an agency interpretation that does not impose judicially enforceable duties on either this court or the ALJ." *Lockwood v. Comm'r*, 616 F.3d 1068, 1073 (9th Cir. 2010). "Such agency interpretations are entitled to respect but only to the extent that those interpretations have the power to persuade." *Id.* (quotation marks omitted) (citing *Christensen v. Harris County*, 529 U.S. 576, 587, 120 S. Ct. 1655, 146 L. Ed. 2d 621 (2000) and *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944)); *see also Kennedy v. Colvin*, 738 F.3d 1172, 1177-78 (9th Cir. 2013) (same); *Moore v. Apfel*, 216 F.3d 864, 868-69 (9th Cir. 2000) (declining to review allegations of noncompliance with internal agency manual, which "does not carry the force and effect of law.").

Plaintiff additionally argues that the "presence of unreasonable conflict over trivial matters precludes the level of social contact described by the ALJ's [RFC] assessment" and "rests fully consistent with the limitations described by Dr. Erhart, a limitation that would leave less than occasional contact permissible." Pl. Brief at

11. And assuming Dr. Pearlman's assertion that Plaintiff is confrontational with his siblings is transferable to the work environment, that argument could be persuasive. However, having already found that remand is warranted, the Court need not decide this issue now. *Hiler v. Astrue,* 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *Augustine ex rel. Ramirez v. Astrue,* 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

On remand, in assessing the opinion evidence, the ALJ should explain the weight accorded to each opinion, and give legally adequate reasons for discounting or rejecting part of an opinion or crediting one opinion over another.

## V.
## CONCLUSION

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: November 23, 2015

*Rozella A. Oliver*

ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

## NOTICE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**